Good morning. May it please the Court, Alexa Sosha from Alicia Connor & Sosha representing petitioners SSA Marine and Homeport Insurance Company. This case arises under the Federal Longshore Act. It's what's called a multi-employer or last responsible employer case. The first issue before this Court, though, is whether or not you have jurisdiction to hear the case. And SSA Homeport asserts that pursuant to this Court's decision in McGregor, that the Ninth Circuit does in fact have jurisdiction. Briefly, by way of background, there are four dates of injury involved in this case. The first being in November of 2001, filed by Mr. James Lopez against Eagle Marine Services. The second date of injury was in November of 2002, also filed against Eagle Marine Services. Third date of injury in October of 2002, filed against APM Terminals, also referred to as MERS. And the fourth and final date of injury, April 8, 2003, filed against my client's petitioners, SSA Marine. The case proceeded to trial before the ALJ in April of 2004. The ALJ found that SSA Marine was in fact the last responsible employer under the Longshore Act and pursuant to this Circuit's decision in the Price case. The ALJ also made findings with respect to SSA finding them liable for medical care and treatment for Mr. Lopez's industrial injuries. He also made a finding that Mr. Lopez had in fact provided timely notice under Section 12 of the Longshore Act to SSA Marine for the April 8, 2003, date of injury. And lastly, he found that SSA Marine was liable for attorney fees to Mr. Lopez's counsel under Section 21A of the Act to include pre-controversial attorney fees extending all the way back through the date of injury when Mr. Lopez was represented by, was pursuing the claims against MERS and Eagle Marine Services, although that issue was not in front of him. SSA Marine appealed to the Benefits Review Board. The Benefits Review Board issued a decision October 26, 2005. In that decision and order, the Benefits Review Board upheld and affirmed the ALJ's decision as to Section 12 notice. The ALJ also upheld and affirmed the ALJ's decision as to finding the last responsible employer. The Benefits Review Board also upheld the finding of SSA's liability for attorney fees to include pre-controversial attorney fees. However, the Benefits Review Board remanded the case back to the district director level as well as the ALJ level on one issue, medical care and treatment. The Benefits Review Board first remanded the case back to the district director to make a finding pursuant to Section 7D of the Longshore Act as to whether or not Mr. Lopez's treating physician had met a filing requirement for medical reports. Before you use up any more of your time, you're outlining the scenario. Just very briefly. Okay. It seems to me the scenario matches McGregor. Exactly, Your Honor. The challenge isn't so much whether it matches McGregor as to whether McGregor is still good law. Okay. Let me move on then right to that then, Your Honor. Thank you. Yes, in fact, it is our position that McGregor is good law. I know the Director cited in their brief the decision of Bish v. Brady-Hamilton-Stevedore Company, which was issued by this Court in 1989. However, it's our position that the Bish case is, in fact, distinguishable from the McGregor case, with the McGregor case finding that SSA's actions were, in fact, a timely appeal to the circuit. First of all, in the Bish case, there would have been a threat. Bish was not an unvolved decision, was it? No, Your Honor. So it doesn't really matter if Bish is inconsistent with McGregor, does it? I don't believe so, Your Honor. However, the Director in asserting that SSA's brief petition for appeal to the Ninth Circuit should be dismissed relies heavily on that in their brief. Although, because, I mean, this is our internal rule, but it's a fairly standard rule, we can't, a three-judge panel cannot disregard and overrule an earlier decision by a three-judge court without going en banc. And Bish, this three-judge panel, if it's going to disagree with, if it thought it was disagreeing with McGregor, it had to go en banc. So at least we should, I think, start reading Bish with the understanding that the court that decided Bish did not think it was inconsistent with McGregor. Absolutely, Your Honor. And I would agree with that. And the holding, though, to find that Bish felt that this appeal should be lacked for jurisdiction further isn't warranted, because if you look at the facts in that case, the Director relies on. And I think what we should do at this point is, I suspect, certainly this is true for me, I don't want to speak for my colleague, I suspect you're going to win on the appeal part, so I'm going to be up for that. But you might lose on the merits, so you better get there. Okay. All right. Okay, Your Honor. Actually, that's fine with me. I, okay. That's absolutely no problem. And as you get to the merits, there's one issue having to do with the attorney fee. Correct. And that's what I'd like to address first. Yes. And it appears that your opponents are contending that, in fact, no harm, no foul, because you didn't end up liable for any attorney fees. And they're contending further that you concede that in your reply brief. That is true, Your Honor. And even if that's not true, there's a fabulous opinion in Dyer that takes care of the question. Well, and I'd like to, and I will address that as well too, Your Honor. Is there any reason to address it? Should we take any time whatsoever in this case? I think the answer is no. The game's over. Well, Your Honor, but the problem is with the attorney fee issue and the ALJ's award of pre-controversial attorney fees, then applying it to the last responsible employer issue, what's happened then, the BRB rubber-stamped that, and now subsequently you have other decisions. The last responsible employer, that's for real. I'd love to hear you address that. But pre-controversial, that's settled by Dyer.  Okay. I would respectfully disagree, only in Dyer, of course. Let me pose a question that might make a difference today, because I don't think anything you say about attorney fees possibly can. Okay. The one thing that really troubles me here is, and it's not the last responsible employer rule, but we have one day of employment. Yes. We have notice not given right away based on that one day. That is correct. And it seems to me there is some degree of tension here, which I'd like you to speak to with regard to whether the notice was given timely or whether SSL was prejudiced by what it perceived to be untimely notice. Okay. I will. In light of what you've indicated in the attorney fees, while I respectfully disagree with some of the opinions in Dyer and how they apply to the last responsible employer, I would like to certainly move on and address the issues of notice, Your Honor. The last day of employment that Mr. Lopez had with SSA was April 8, 2003. Less than two days later, April 10, 2003, he underwent right shoulder surgery. That shoulder surgery was already scheduled prior to his last day of work. Again, I understand similar to facts in Christ. Subsequently then, he had another surgery, and this one was to his left shoulder. This one now took place, left shoulder surgery was on June 10 of 2003. So it's now been two months since his last day of work at SSA. In the meantime, he was seeking authorization for the shoulder surgery through his private insurance, the ILWPMA Welfare Plan, who authorized it. As the prior employers, the two Eagle Marine date of injuries and then the MERS date of injuries, they had denied authorization for surgery. And employee's claim for compensation, LS-203, that was dated in this case, the one filed against SSA, June 24, 2003. My client's first notice of injury of the April 8, 2003 date of injury was on June 27 of 2003. So it's now about two and a half months after Mr. Lopez last worked for SSA Marine. And on that day, Mr. Lopez failed to notify anybody of any complaints, of any injury, didn't request a doctor's treatment, didn't request a medical slip. He did testify, though, that he had to stop work earlier, could only work for about five hours because his pain had increased, his preexisting pain in his bilateral shoulders and his bilateral knees. However, nothing at all was ever mentioned to SSA, to their employee superintendents. And again, it's undisputed that the first formal notice of his injury in this case is June 27, 2003, after he's already undergone two surgeries that are at stake in this litigation, bilateral shoulder surgeries. As a result of that, SSA Marine, first and foremost, was unable to obtain any type of pre-surgical defense evaluation or examination with an orthopedic surgeon or specialist of their choosing, as they're entitled to under the Longshore Act. Now, if you go back and if you look at the ALJ's decision, he makes a finding to the effect of, eh, what difference would that have made? I probably still would have found that they were the last responsible employer. But, John, that's pure speculation, and at the crux of the matter is, and this Court in Keshuba has found prejudice arising from untimely notice when the employer is denied the opportunity to be afforded the right for a pre-surgical evaluation. In this case, Mr. Lopez underwent two surgeries prior to that. And what difference, I mean, the argument on the other side is, well, the evaluation that your client can make afterward is not prejudiced by the fact that it was afterwards instead of before, because the same medical records are going to be in front of it in either event. But there are things that change. If you're looking, the difference between an aggravation or an exacerbation nowadays can be so minute. It can be one shoulder at five degrees less of motion than it did the day before. So SSA would have at the very least had the opportunity to compare examinations, orthopedic examinations of Mr. Lopez in the days or weeks or months preceding his employment on April 8, 2003, and then thereafter. And I'm trying to facilitate your argument. It could have actually done a physical investigation of him in the preoperative state. Absolutely. And, of course, that they can no longer do. They can look at all the records. But they can't physically examine him in the preoperative state because he's in the postoperative state. He's in two postoperative states. In fact, the window, if you see, from the day of the last employment until that first surgery, which Mr. Lopez knows he's having, Mr. Lopez's attorneys know he's having, the employers in the prior cases may have known that he's having, and his treating physician certainly knows that he's having it. But SSA has no opportunity in that 36-hour window, nor thereafter. Then there's a second opportunity at least maybe to get an exam before the second left shoulder surgery. At that time, the defense doctor or the IME can question also as well the claimant as to, well, what were your specific job duties on that day? How did you feel? Let me ask you this. This question arises out of sheer ignorance on my part because we don't run into the statute sometimes, but it's not one that I deal with every day. So what happens if you win on this point? Does he get compensation from anybody?  Does he go back to the previous employer? What happens? Well, you know what? That could go either way. First of all, I believe under Section 12 that a claim for medical benefits is never barred. And so it would be the issue then of the compensation benefits. What has happened in this case already, though, Your Honor, is SSA Marine having been found liable under the ALJ's decision in order, despite all these appeals that have been going on, have paid Mr. Lopez. It was approximately a year of temporary total disability benefits pursuant to the ALJ's order, have subsequently paid out approximately $150,000 for scheduled permanent partial disability benefits for his niece, as well as issued reimbursement to his private insurance to about $65,000. If it would be found that the claim for disability benefits, compensation disability benefits, were barred under the Act, then I believe you're... Because your client is not the last responsible. Correct. And there is, if you look back... My question, it may take you this long to answer, but it may not. Okay. So does he just bump back to the previous employer? That would be an option, Your Honor, because one thing to look at is in the medical record, first of all, there's no dispute that he suffered admitted injuries in 2001, in 2002 with Equal Marine, and then there seems to be an issue as far as the APM, I'm sorry, MRSC injury in 2002, if there was an injury or if it was an exacerbation. But, yes, you could then, if there's any concern as to whether or not Mr. Lopez would suffer at all from that in the general scheme, because he does have bad knees and bad shoulders that seem to be work-related. It's a matter of which employer they could be due to. Then, yes, I would think that the argument could be made that he could revert back to the earlier injuries in 2001, 2002, which physicians did find in this case was the true cause. Okay. And the other side may be able to answer that better. I mean, obviously, it's in your interest to say that somebody else will pay it if you don't. Well, it's already been paid. What it really would be is then it could become a reimbursement issue. As an SSA, if another employer were found liable, then SSA would seek reimbursement for the money that's already spent, which, in fact, is something that the other parties are aware of. Some of the agreements that we've reached, for instance, on remand when there was medical treatment issues, some of those agreements included the terms that should the last responsible employer issue be overturned on appeal, SSA or another can seek reimbursement from each other. Okay. No one comes after Mr. ---- I should just clarify that no one, as far as if SSA, that claim were denied for notice, and if it reverted back to another employee or prior employee, the 2001 or 2002, that would not affect Mr. Lopez. Yes. So it's then going to be a fight between your client and the prior employers? Correct. Okay. And they can tell me if they disagree. Okay. Okay. Why don't we hear from the other side. Okay. We'll then let you respond. Okay. Thank you for your answer. May it please the Court. I'm Joshua Glellen, appearing on behalf of the claimant, Mr. Lopez. I can hear, and I don't want to spin my wheels or waste all of our time, but I certainly would like to point out that the Section 21A factor in the appealability, the reviewability of the decision that's before you now, was not considered in the McGregor case. McGregor does not mention Section 21A, that is, the provision of the statute, that if the ALJ's compensation award is not appealed to the Board within 30 days of the decision. Was that section in the statute at the time of the McGregor decision? It was. But there's been no change in the statute since that time. There has not. We are not free to overrule McGregor. Well, there is authority. You can waste your time by talking, but understand that we don't think we're free to overrule McGregor. Okay. I'd rather you spend your time on something that might make a difference today. I would love to. Thank you very much. On the last employer, the responsible employer issue, the appeal that's been brought before you does not address in any way, it's completely absent from their opening brief and their reply brief, the critical decision of this Court in what's been referred to as the Price case, Metropolitan-Stevador against Crescent. That case says, in terms, right-line rule, last exposure. In a cumulative trauma case, the last exposure to the conditions of the work, the kind of work that led to the cumulative trauma injury, is the work to which the liability attaches, even when, as in the Price case and in this case, the surgery, the joint replacement surgery, has already been scheduled before that last day of work. Not even addressed by SSA here. Now, under that right-line rule in the Price case, there is no room. I'm not going to speak in defense of that rule, but if McGregor is binding authority. I haven't heard any questions that challenge the rule. The question I have is the tension that I see between the prejudice argument with regard to notice and the necessary findings so that this party, SSA, becomes liable under the last responsible employer rule. Work there one day. Certainly not impossible that something happened that one day that makes SSA responsible. He doesn't say anything about that to SSA. He has two surgeries, and then SSA receives notice. How is it that SSA doesn't suffer prejudice because it has no opportunity itself to examine the question of, did something happen on April 8th to tee it up for responsibility here? Accepting the last responsible employer rule, if something happened on April 8th, they're liable. But they can't look at that because by that time he's had two shoulder surgeries. I think what that misses is that all that is necessary to trigger liability under the Price rule is microscopic, incremental damage that no one could see by examining anyway. It doesn't matter whether anything discernible happened that day. As in the Price case, the only evidence is it got a little bit worse, the joint war. What evidence of there is that? There's two medical opinions to that effect that just as in Price. The medical evidence is every time he spent another four hours on his feet and with his arms over his head, bad for his shoulders, bad for his knees. That causes further microscopic damage to those joints. Because the joints are already so badly damaged, they're in need of surgery the next day. He's tried to get along without the surgery. He's not going to make it. Every day when he does work, he goes home, rushes home so he can take a hot shower and take painkillers and go to bed. Does this effectively mean we're dealing with a last employer rule because responsibility can never be discerned? Which could be the case. Under this decision, and again, I'm not going to speak in defense of this decision. I can leave that to Mr. Valenzuela, his client, as a dog in that hunt. But the one thing that we cannot put up with is a rule, the Price rule, that it's a bright-line rule, unless we don't like the result in the next case. And then the claimant is just going to, you know, not the first thing that's. I don't hear any argument with the rule. The real question, I think, is, is there a problem on the facts of this case, either in terms of evidence to establish that something happened on April 8th or in denying this party the opportunity to examine for itself and address that question. And on the first half of that, the petitioner has not even addressed the rule as it is stated in Metropolitan State of Oregon's Crescent. The rule as stated there, this bright-line rule, only requires that incremental microscopic damage which couldn't have been detected on examination. Now, it doesn't use those words. It says, a result of a subsequent aggravating, accelerating, or combining with a prior injury. I don't see microscopic and discernible. Maybe you can point me to that language. I think the part of the opinion that you're looking at is recounting what was already well-established law. So give me the language in Price that is the most favorable to you. And I may or may not say microscopic. But whatever it is that tells me that it can be microscopic, incremental, you know, whatever you want to say. There was gradual wearing away of the bond, even though we're not. Where are you? I don't want to read it. The second column on 1105, about two inches down. Okay, the gradual wearing away, okay. Even on the last day before the previously scheduled surgery. So his employment with Metropolitan caused a marginal increase in the need for surgery. Okay, but that's a factual finding that on the last day before surgery, there was a gradual wearing away of the bond. Yes. He worked for SSL, as I understand it, for one day. Yes. And he raised his arms over his head for quite a bit of that time, signaling. And he might have had to move some cones around. And because SSL was unable to perform any physical examination of Mr. Lopez, they're quite limited in determining whether there was any further injury to him during that time. I'm concerned not so much with the finding of the ALJ on the evidence in front of it, because, you know, if that's all that needs to be shown, we don't need much evidence to support it under the substantial evidence rule. But I'm concerned procedurally that there may have been some mistake when the ALJ says, you know, I know the late notice doesn't make any difference. Okay. Because it does seem to me that having the ability for a doctor to have a look at it and say, well, what might have happened on that one day when he worked whatever it was, five or six hours, I mean, that's the critical question. What happened during that day? Well, yes. And the claimant's evidence addressing that point didn't depend on any examination between that work and surgery. It couldn't because he didn't have any examination. If he had an examination, he might have had different evidence. He had already had his pre-surgery, his final pre-surgery examination and was ready for the surgery. So there was no further examination needed. Well, there was no further examination in order to determine whether he needed the surgery. There might have been a further examination to determine who was the last responsible employer. No examination. I mean, the ruling in place doesn't depend on an examination between the two. But it depends upon a factual finding that the work performed by the last employer resulted in some increase in the injury. And here, as in Price, the evidence that's presented addressing that question is medical theoretical evidence. It is not evidence based on an examination of each of the joints. There was no exam in Price either. There was medical theoretical evidence that, yes, we have bone on bone. Any physical work, being on his feet, wears away those joints even further. Using his arms wears away those joints even further. That was the only kind of evidence that was present in the record in Price. And it's the evidence that was present here. So no physical examination in Price either. They didn't care. And the ALJ got to do it based on that. Well, this would have happened. Yes. I think that's a fair synopsis of what happened in Price and here. Now if we go on to the timeliness of notice. Are you planning to share time with any of your colleagues? Right now we're about two-thirds of the way through the time. I am, but I think the notice point is mine alone. So I would like to address that a little bit further. And I have the consent of my colleagues for that, I believe. The critical point of notice is not the 36 hours between the end of his work day and the surgery a day and a half later. The claimant has, by law, 30 days to give time. Which he didn't satisfy. Which he didn't satisfy. So we're automatically into the prejudice question. No, actually not. Because the time to give notice does not begin to run on the day of the work. It begins to the day of injury. The argument is the timely notice wouldn't necessarily have allowed, in fact probably would not have allowed SSL to perform the examination they said they wanted to perform. Certainly not before the first of the two surgeries. That's right. Even if that were a critical thing for them, that would have been beneficial to their defense. Which it wasn't because this is a theoretical medical theoretical inquiry. But even if it were, the ALJ and, you know, the time they were entitled to notice was not until after that first surgery anyway. That's a complaint. Their complaint that they really needed to look at him before the surgery is a complaint with the statute. It doesn't say within 30 days or before any surgical intervention. It says within 30 days. The ALJ found both. Okay. I think we've got your point. What's your colleague want to argue? I mean, if they don't want to have anything to argue, that's okay. But if they've got something they want to say, I guess it's time to say it. Good morning. Thank you. Daniel Valenzuela on behalf of Eagle Marine Services. On behalf of Eagle Marine Services, the initial employer for the first two injuries in December of 2001 and January of 2002. And I would like to speak to what time I do have left the last responsible employer issue. We know the standard. The standard, and I will repeat, and I apologize if I'm going over something again. We know the standard, too. Okay. All right. So then the issue with regards to was there a contribution to the preexisting disability, the preexisting impairment that led to the ultimate disability as a result of the injury at SSA on 4-8-2003 is simply, was there contribution, aggravation, or acceleration of the preexisting disability that led to the ultimate disability? That is a question, a factual question. And that situation, the administrative law judge relied on the opinion of the two treating physicians, Dr. Alan Dellman and Dr. Stuart Gold, and also the testimony of the claimant himself. Now, with regards to the injury of itself, the injury is actually cumulative trauma injury. The work activities primarily as a signalman from January of 2002 through April 8, 2003. It's that complete period of activity of the signal person ending on April 8, 2003. That's the injury. But the Law Enforcement Act doesn't allow apportionment. And therefore, the responsible employer who last exposed the individual, the injured worker, to the injured stimuli or the activity is the employer responsible for everything. Okay. In this case, factually, Mr. Lopez, the SSA, on April 8, 2003, worked as a signalman. His duties not only required repetitive overhead work all day with regards to signal activity, but he also had to remove cones from chassis that were delivering containers. That involved lifting 30 to 50 times an hour two 15-pound cones at shoulder level, arms outstretched or higher throughout the day. Now, that's the type of activity that both the treating doctors relied on. To conclude, Dr. Lopez. Let me ask you a question that I asked your adversary. Okay. So what happens if we reverse and say, well, there's simply not enough evidence to support a finding that SSL was the last responsible employer? What happens? Well, then it goes back to make a determination who the last responsible employer is under the Metropolitan Price Rule. So somebody is. Well, if there is a finding, it could be the day before, there could be notice issues, just like we're talking about. But the fight turns into a fight as among the various employers. Mr. Lopez is compensated no matter what. It all depends. Is there going to be a notice issue? There probably will be a notice issue. Let's change. Suppose our finding isn't or determination isn't there was insufficient evidence for the last responsible employer. Correct. Our concern becomes notice was not timely given to the last identified employer. And that employer was prejudiced as a result. Is it too late for him to claim back against previous employers? No recovery to Lopez. Just like a statute of limits. I would say no recovery to Lopez. If it's determined that substantial evidence exists for the administrative logic to make the determination that SSA is the last responsible employer, that a reasonable mind can make the conclusion that the opinion of two treating doctors in the claimant is substantial evidence that SSA is the last responsible employer, you make the finding that SSA did not receive appropriate notice, that that notice was prejudicial, then there's no recovery for Lopez. Because all other notices would be necessarily by the same reason and the lateness would be prejudicial. That's the argument? No. I think because it's a finding. You've made the finding that SSA is the responsible employer. They created the injury. They're responsible for the harm. But they have no liability because it's prejudicial. I see. So the only way it would bump back to the early employers is if we were to say that they're not the last responsible employer. No. If you said that they were the last responsible employer, but they were prejudiced because they didn't receive appropriate notice. Like a statute of limitations. Someone can ---- Listen to this question more carefully. Okay. I think you're in. The only way it would bump back to the previous employers would be if our determination was that the last responsible employer designation of SSA was not adequately supported. That's correct. If our finding or if our determination turned on the question of notice and prejudice to SSA, you're telling us it could not bump back to the previous employers. That is correct as long as you affirm the finding that SSA is the responsible employer. Well, what happens if we say, well, because of the lateness of the notice and because of the prejudice resulting therefrom, we can't tell whether, in fact, SSL is the last responsible employer. I don't see how you can make that determination. The determination ---- What's the prejudice argument? The prejudice argument is that they were prevented from putting forward evidence to controvert. No. Well, that would be the prejudice. But that doesn't go to whether there was proper notice. But you can't ---- The question on appeal in the last responsible employer issue is not whether there is contrary evidence, whether other evidence could have been ascertained with regard to the last responsible employer. The issue is simply is there substantial evidence to support the administrative law judge's decision on the last responsible employer. Is the opinion or are the opinions of the treating physicians, the testimony of the claimant that the ALJ relied upon, is that substantial evidence? Would that lead reasonable minds to the conclusion that SSA is the responsible employer? And I think, of course, it is. I mean, with regard to the opinions of the treating physicians and the testimony of the claimant on how his condition worsened, his pain worsened on that day, the testimony of the treating physicians, that those are exactly the type of activity that led to the impingement problem in shoulders. Thank you. Would you like a minute? I just wanted to respond just to a few things. As far as the last responsible employer issue and the notice issue, a lot of this has been periodically briefed by both parties. Just in response to some of the things that were said, though, during oral argument, the last responsible employer doctrine or rule does not dispense with Section 12 notice requirements. There's nothing in Price or, you know, in the last responsible employer cases that says, well, once we find there's a last responsible employer issue, Section 12 notice, those requirements have been dispensed with and are no longer subject to inquiry. I just noted that because it appeared to me that Counsel for Mr. Lopez was somehow saying that because this is a last responsible employer case, the notice issue and Section 12 requirement is out the window. In the argument I just heard in terms of what physical examination was not required in Price, tell me again what the prejudice is that you claim your client suffered from the late notice. Well, Your Honor, I think there were several things. One of them, which is brought up in the brief, is, you know, Mr. Lopez gives somewhat varying accounts of what happened on that day. There was brought to your attention what his job requirements were on that day. It was raised by some of the parties that his job requirements when signaling required him to raise his hands over his head. Now, if you look at some of the other testimony, though, you'll see that Mr. Lopez also testified that because of his preexisting shoulder problems, already set for surgery, already showing rotator cuff tears on the MRI, that he kept his hands up. I understand that. But how does the late notice prejudice you in presenting the case? He could have investigated that much faster. You know, when there's reports of injuries given to employers in this industry, within days they're investigating. They're trying to locate coworkers. That would have been a very important thing. If he could have found, you know, people who were actually observing Mr. Lopez, what was he doing? Was he working like this? Or was he working his shoulders at his side? Did you get people to testify how he was working? There was people that testified more generalities. Would a signal man be lifting cones? Which is really much of what you'll see. But if he provided timely notice, this could have been 30 days after the purported injury, right? So even with timely notice, you're asking people. I still would have made it in for one surgery, though. Pardon me? I said I still would have made it in for at least one surgery. But in terms of what he did on that last day, you are, even with timely notice, a minimum of 30 days after the fact. Correct. It would be after the first surgery. One thing just briefly I wanted to mention to you, Your Honor, Mr. Valenzuela was saying that if the issue, if SSA were found not to be the last responsible employer, then issues of notice may be raised as to the earlier employers. Those dates of injury, no employer, EGLE Marine Services, those are admitted dates of injury. They've not been denied on injury AOE, COE, and EGLE Marine Services never raised Section 12. Okay. Thank you. Thank both parties for their arguments. SSA Marine v. Lopez submitted for decision, and we are on adjournment for the day and for the week and for the month. Thank you.
judges: Singleton, Fletcher W. , Clifton